## DEAM v. DAWSON ET UX.

REPLEVIN.—*Jurisdiction of Justice of the Peace.*—*Weight of Evidence.*—*Supreme Court.*—In an action to replevy certain personal property, of the alleged value of one hundred dollars, commenced before a justice of the peace and appealed thence to the circuit court, wherein the defendant pleaded to the jurisdiction of the court that the value of such property

exceeded two hundred dollars, the evidence was conflicting as to such value, and the circuit court found for the plaintiff, and that such property was of the value of one hundred dollars.

*Held*, that, in such actions, justices of the peace have jurisdiction to the extent of two hundred dollars.

*Held*, also, that the Supreme Court, on appeal, can not disturb the finding of the court below, if there be evidence tending to sustain it, though the preponderance seems clearly to be against it.

From the Wells Circuit Court.

*R. S. Taylor*, for appellant.

WORDEN, J.—This was an action of replevin by the appellees against the appellant, for a mare. The action was commenced before a justice of the peace, and appealed to the circuit court. The complaint before the justice alleged the value of the mare to be one hundred dollars.

In the circuit court the defendant pleaded to the jurisdiction, that the mare was of the value of three hundred dollars.

Trial by the court; finding for the plaintiff, and that the value of the mare was one hundred dollars. Motion by the defendant for a new trial overruled, and judgment.

The only point made here relates to the sufficiency of the evidence to sustain the finding of the court as to the value of the mare. The exact value of the mare was not material, except as it affected the jurisdiction of the justice, and therefore of the circuit court on appeal from the justice.

The following was the evidence in the cause, so far as it went to show the value of the mare:

Anna E. Dawson, plaintiff, testified: " The animal in dispute is a small bay or brown mare, five years old, worth $100."

John C. Dawson: " I am a step-son of the plaintiff. * * * The mare is a dark bay or brown, five years old last spring. * * * The mare is small; worth $100."

Alonzo Dawson: "The mare in controversy is a small brown mare, five years old."

D. J. Wilson: "I know the mare; is about fourteen hands high; weight about eight hundred pounds; worth $100, perhaps more. I am a farmer and know nothing of the value of horses except as I have learned from my experience as a farmer. I never tried this mare's speed."

William Dawson: "The mare is very small, not pretty. Her left eye was in bad condition when this suit was commenced. I have been acquainted with the mare ever since she was a colt. She belonged to my step-mother, the plaintiff. Mare dear at $100. I have seen the mare trot. I was raised on a farm. Have been running a saw-mill the last four years. Have had no experience in handling fast horses. The mare was not a very fast animal."

J. C. Dawson, recalled: "I noticed in three or four weeks after this suit was commenced, that one of the mare's eyes was failing."

DEFENDANT'S EVIDENCE.

A. D. Helm: "My business is training horses during the summer season. Have been so engaged eight years. I once drove the mare in a race at Bluffton, and saw her trot in Huntington. I went to Dawson's to trade for the mare on the day before she was sold. * * * Mare was worth $300 to $400. I knew the mare and liked her. This was about a year ago. I think it was in 1873 that I saw the mare last. In July, 1874, I did not see the mare. I handle trotting horses. I buy and sell trotters, and am acquainted with the value of fast horses."

Manassah Ruth: "The mare was not very fast at that time," (a time previously mentioned,) "but there was a good prospect for a mare of her age. Was acquainted with her more or less until she was sold. When this action was commenced the mare was worth $300. I have been in the business of handling horses about eight years. I have been

Deam *v.* Dawson *et ux.*

and am acquainted with the value of fast horses. This mare could trot in about 3-15 when I left her. She was said to be four years old. She had a four-year-old mouth. A horse that can trot in 2-30 is worth from $5.000 to $10.000. I should think she had never been trained before I got her. Her eyes were in a good condition when I saw her."

John Dougherty: "I have been in the livery business two years. * * * I think the mare was worth over $200 at the commencement of this suit. She had speed, and the prospect of her making a fast horse was good. I did not notice her closely during last summer."

Charles Clark: "I am acquainted with fast horses and their value. I knew this mare all the time that she was here. She was worth, in July last, $300 to $400. * * * I have been interested in fast horses two years. Had a mare that was pretty fast. I saw the mare trot in June, 1874."

Wilson Deam, defendant: "I traded with Perry Alexander for the mare. I think there was a prospect of her becoming fast. I am acquainted with the value of fast horses. She was worth between $300 and $400 when she was replevied."

The foregoing, we believe, is all the evidence in the record that seems to throw any light upon the value of the mare. The court was not bound to rely exclusively upon the opinions of witnesses as to the value of the mare, but might properly take into consideration her description and characteristics, as given by the witnesses. She seems to have been small, about fourteen hands high, and of the weight of about eight hundred pounds, and not pretty. Moreover, one eye seems to have been injuriously affected. The best time the mare was shown to have made was about 3-15.

There was, beyond question, evidence tending to show

that the mare was not worth more than $100. The justice had jurisdiction, if the value of the mare did not exceed $200. 2 R. S. 1876, p. 605, sec. 10. There may have been a preponderance of evidence showing that the mare was worth over $200.

This court, however, does not decide cases upon the preponderance of evidence. The primary functions of this court are the determination of questions of law, and not questions of fact. This court will, to be sure, set aside the finding of a court or jury, which is unsupported in any material point by the evidence. But, where there is substantial evidence in support of the finding or verdict, this court will not disturb it, though there may have been, in the opinion of the court, a large preponderance against the finding or verdict. This has long been the established practice of the court.

There was, in this case, evidence tending, and strongly tending, to sustain the finding; though it may have been overcome by a large preponderance against the finding.

We, however, can not interfere without overturning the established practice, and instituting a new theory, by which we make ourselves the final triers of the facts in a cause.

The numerous evils that would grow out of a system by which this court should decide causes appealed to it, by what it might regard as the weight of the evidence, are too apparent to need statement or exposition.

The judgment below is affirmed, with costs.